Davis, J.,
delivered the opinion of the court:
This suit is brought to recover for mail service performed in thirteen round trips between the United States and China. The contract price per trip was $41,666.66.
At the trial in the December term, 1877, the court found that six trips were performed in wooden vessels which had been accepted by the United States under a former contract, six trips in wooden vessels which had not been so accepted, and one in an iron vessel accepted under the contract sued on. The court held that the claimants could not recover for any of the trips in the wooden vessels, but gave judgment for the one performed in the City of Peking, an iron vessel.
The case was taken to the Supreme Court on appeal. Our judgment was in part reversed there, and we are now called upon to execute the mandate.
The mandate directs proceedings to be had “ in conformity with the opinion and judgment” of the appellate court. That opinion says: “As regards the sum allowed claimant for the voyage of the City of Peking we think the Court of Claims was clearly right.” That is, therefore, no longer in dispute.
The opinion also says : “ The Court of Claims finds that the .additional mail service was performed by twelve round trips, beginning October 17, 1873, and terminating January 16, 1875, and that of these voyages six were made by ships which had been accepted under the first contract, and six by vessels which had never been accepted by the Postmaster-General. We are of *625 opinion that claimant can only recover on this contract for the service rendered by vessels which had been accepted under the contract.” The service rendered in the six trips by unaccepted vessels is therefore likewise no longer in dispute.
The government concedes that the mandate entitles the company to recover for five trips in the accepted vessels. This leaves in dispute only the trip of the Japan, which left San Francisco August 29, 1874.
The opinion of the Supreme Court clearly recognizes this trip as one of those which are to be paid for; but it adds: “ There may be deductions for non-performance of duty, or other matters provided in the contract, in regard to which no finding is' made by the Court of Claims, but which will be open to inquiry on the return of the case to that court.” Our power of action in the premises is thus limited to deductions from the contract price of the trip by reason of, first, non-performance of duty; and, second, other matters not provided in the contract. On both these points we may make further inquiries, except so far as precluded by facts already found. The parties have made an agreed statement on these points, which we have incorporated in our findings as a fact.
This statement shows that there was a delay of thirteen days in the time of starting the trip. It also shows that the Japan made only a portion of the round trip. She went only to Yokohama. The mails for that trip between that port and Hong-Kong, both ways, were carried by unaccepted vessels. The defendants contend that each of these facts amounts to a substantial variation from the contract, and takes the trip out of its operation.
The former findings showed the day of the starting of the Japan on the disputed trip. The mandate leaves us no power to make a deduction for non-performance of duty or other matter in the contract, in regard to which a finding had been already made.
The second objection raises a more difficult question. The contract was to carry the mails between San Francisco and Hong-Kong; touching at Japan with mails. As interpreted by the Supreme Court, it was a contract to carry them in part in seven side-wheel steamships which had already been constructed by the company, and inspected and accepted by the government. The disputed carriage was made to and from Japan in *626 one of the accepted vessels. For some unexplained reason it was made between Japan and Hong-Kong in unaccepted vessels. If we assume that there was no good reason for the fail-, ure, and that the substitution of the unaccepted vessels was an arbitrary act, it follows that the company was in fault.
On the other hand, it is plain that the government got in substance all it bargained for, except in the matter of the time of starting, which we have already disposed of. The company carried the mails to Hong-Kong in a safe and secure manner, and employed in doing it one of the specially constructed vessels. If it was the object of the government in contracting for a particular kind of vessel to secure the safe transportation of the mails, that object was accomplished. If it had in view the construction of vessels of that kind in the mercantile marine, that end also was gained. We are not prepared to say that no circumstances could arise which would relieve the claimants from performing the'whole trip in accepted vessels, or which would warrant the Postín aster-General in accepting a part performance in an accepted vessel as a whole performance, or which would require the court to so regard it.
It is plain from all the facts that the voyage was and still is treated at the Post Office Department as performed in an accepted vessel. They show no equitable reason for stretching the authority conferred upon us by the mandate. The Supreme Court, as we have already pointed out, authorizes us to make further inquiries as to matters “ in regard to which no finding was made,” and further says that “ the Court of Claims finds that * * of these voyages, six were made by ships which had been accepted.” Under the circumstances we hold ourselves bound by the literal language of the appellate court.
On the 17th day of May, 1881, the Postmaster-General ordered that in case judgment should be rendered in favor of the claimants for the disputed trip, a fine of $13,000 for thirteen days delay in starting be imposed upon claimants. The Attorney-General contends that if we find for the claimant as to this voyage the amount of the fine should be considered in making up the judgment.
This cannot be done, for two reasons: 1st. The reason already given that the mandate leaves no power to make deduction for non-performance of duty or other matter in the contract, in regard to which a finding of facts has already been made. 2d.
*627 The order on the face purports to bave no effect until our judgment is entered, and therefore cannot be considered in making it up. It may be a proper matter for consideration at the Treasury' when the judgment is presented for payment, but cannot be entertained here. If it has any force in this court it •can only operate as an estoppel to prevent ’the government from setting up that the voyage was not performed under the contract.
The judgment of the court is that the claimants do have and recover of the Uuited States the contract price for seven round trips, as follows : For the trips commencing October 16, 1873, November 17, 1873, February 14, 1874, April 18, 1874, June 13, 1874, August 29, 1874, aud February 20, 1875, less the sum of 8549.36, already received by the claimants, being the sum of two hundred and ninety-one thousand one hundred and seventeen dollars and thirty cents ($291,117.30).